■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JIMMIE YOUNGERMAN, Respondent. [616 NYS2d 547] —Appeal by the People from an order of the Supreme Court, Queens County (Rosenzweig, J.), dated June 11, 1993, which granted those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.

Ordered that the order is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials are denied, and the matter is remitted to the Supreme Court, Queens County, for further proceedings in accordance herewith.

On December 19, 1992, at approximately 5:20 A.M., New York City Police Officer Garry McKenna responded to a barbershop which had been burglarized. According to the employee reporting the burglary, it had occurred sometime before his 5:00 A.M. arrival at the premises. The employee reported that a black bag with brown handles, in which there were various grooming devices, was missing.

After completing his report at approximately 5:45 A.M., Officer McKenna and his partner were instructed by the radio dispatcher to respond to another, unrelated crime scene. On their way there, two blocks from the barbershop, Officer McKenna observed the defendant standing between two parked cars. There were not a lot of other people in the area —it was somewhat secluded. As the defendant observed the patrol car, he made a U-turn and began walking away from the car. The defendant stepped between two parked cars and then stepped back on the sidewalk and continued walking.

Officer McKenna, noticing that the defendant was carrying a large black bag, stopped his patrol car and watched the defendant through his rear view mirror. He saw the defendant look back at the patrol car, make another U-turn and walk down a street out of Officer McKenna's sight. Officer McKenna turned his patrol car around and followed the defendant, who

was clutching the bag under his right arm, close to his body. As the defendant walked, he looked around, back, and forth.

Officer McKenna pulled his patrol car up next to the defendant. As he did so, the defendant dropped the bag to the ground. Officer McKenna exited the patrol car and asked the defendant what he was doing with the bag. The defendant responded that he was a barber. Officer McKenna asked if he could look in the defendant's bag and the defendant opened the bag and said, "I found this". Officer McKenna, observing that the bag contained barbershop items, told the defendant that there had been a barbershop burglary and that the items in the defendant's bag fit the description of property taken from the shop. He asked if the defendant would accompany him to the barbershop, and the defendant agreed. The barbershop employee identified the property in the defendant's bag and the defendant was then arrested.

We find that under the circumstances of this case, Officer McKenna's observation of the defendant a mere two blocks from the burglarized premises, in an otherwise secluded area, in possession of a bag similar to the one reported stolen, coupled with the defendant's evasive behavior, both in trying to avoid the police and in immediately dropping the bag upon the officer's approach, gave the officer a founded suspicion that criminal activity was afoot (see, People v Hollman, 79 NY2d 181). Accordingly, the officer was justified in asking the defendant about the bag. The defendant's inappropriate and suspicious response, that he was a barber, provided the officer with a proper legal basis upon which the officer could request to see the contents of the bag (see, People v Hollman, supra; see, e.g., People v Veryzer, 139 AD2d 609, 610). Accordingly, the hearing court erred in suppressing the physical evidence and the defendant's statements. Rosenblatt, J. P., Ritter and Altman, JJ., concur.

Goldstein and Florio, JJ., dissent, and vote to affirm the order appealed from, with the following memorandum: We respectfully disagree with our colleagues and vote to affirm the order of the Supreme Court which granted those branches of the defendant's omnibus motion which were to suppress physical evidence and statements made by him to law enforcement officials.

On December 19, 1992, at about 5:00 A.M., Gus Gooen arrived at the barbershop where he worked. Upon opening the shop, he discovered that a burglary had occurred sometime between the time he locked up at 7:00 P.M. the past evening and that morning. He promptly called the police. At about

5:20 A.M., New York City Police Officer Garry McKenna, together with his partner Officer Castro, arrived to take a report of that past burglary. According to Officer McKenna, Mr. Gooen stated that *"a black bag with brown handles"* (emphasis added), which contained grooming devices, was missing from the shop. Mr. Gooen did not observe anyone burglarizing the shop nor could he or anyone else give the officers any description of the perpetrator or perpetrators.

The officers then left in their patrol car at about 5:45 A.M. to go to their next assignment and were turning onto 41st Avenue when Officer McKenna spotted the defendant. Officer McKenna also admitted that at that time they were not then canvassing the area in connection with this burglary. As he completed his turn, Officer McKenna stopped the car because he saw the defendant carrying *"a large black sports bag"* (emphasis added). Through his rearview mirror, Officer Mc-Kenna observed the defendant look at them and then make a U-turn and walk down a different street, out of the officer's sight. Officer McKenna also made a U-turn and went down the same street as the defendant.

Officer McKenna pulled up next to the defendant, who stopped and dropped the bag on the sidewalk next to himself. Officer McKenna exited the patrol car and immediately questioned the defendant about the bag and was told by the defendant that he was a barber.

Officer McKenna demanded that the defendant open the bag, and the defendant complied. Thereupon, Officer McKenna looked inside the bag and discovered inside a small black bag with brown handles which turned out to be the stolen bag.

There is no doubt in our mind that the factual situation presented immediately prior to Officer McKenna's questioning of the defendant did not present facts sufficient to give rise to a founded suspicion that there was criminal activity afoot. There was no description given of the perpetrator or perpetra-tors. Moreover, the bag held by the defendant—a large black sports bag—bore no resemblance whatsoever to the bag de-scribed by the complainant—a black bag with brown handles containing grooming articles.

Additionally, at no time did the defendant take any action that could be described as running and/or fleeing from the officers or that was in any way inconsistent with a citizen not sure of his way. Finally, the break-in could have occurred at any time between 5:00 A.M. and the time the shop was closed the previous evening. There was simply no basis to assume

that the perpetrator was still in the area. Under these circumstances, Officer McKenna was only permitted to ask such questions as would be properly permitted under the first and most restrictive level of questioning *(see, People v Hollman,* 79 NY2d 181).

Officer McKenna's question regarding the bag was of a pointed and threatening type rather than a simple request for information. The officer's inquiry clearly focused "on the possible criminality of the person approached" immediately elevating the encounter to the level of a common-law inquiry which "must be supported by founded suspicion that criminality is afoot" *(People v Hollman, supra,* at 191).

In our view, the facts in this case did not give rise to a founded suspicion of criminality, nor was there anything unusual about the sports bag itself to support the common-law inquiry which took place herein *(People v Hollman, supra; cf., People v Moore,* 47 NY2d 911 [defendant observed carrying a pillowcase through which a television set was visible]).

Accordingly, we would affirm the order appealed from, granting those branches of the defendant's omnibus motion which were to suppress physical evidence and statements made by him to law enforcement officials.