**Mary MUSSO**

v.

**Chad SEIDERS, et al.**

**Nos. 3:97CV2606 (RNC), 3:98CV977 (RNC).**

United States District Court, D. Connecticut.

Sept. 8, 1999.

---

Joanne Faulkner, New Haven, CT, for Plaintiff.

Donald Guerrini, Glastonbury, CT, for Defendant.

### RECOMMENDED RULING ON MOTION FOR JUDGMENT UPON SETTLEMENT

MARTINEZ, United States Magistrate Judge.

This action alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, and the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. § 42–110a. Pending before this court is the plaintiff's Motion for Judgment Upon Settlement (doc. # 65). For the reasons that follow, the court recommends that the motion be DENIED.

### I. *BACKGROUND* [1]

Counsel for the parties began discussing settlement in November, 1998.[2] Attorney Faulkner, who represents the plaintiff, and Attorney Guerrini, the defendants' counsel, had several conversations about how to resolve the case. When counsel first began their discussions in November 1998, Attorney Guerrini told Attorney Faulkner that he did not have the authority to settle the case. At some point during the discussions, Attorney Faulkner made a settlement proposal.

There were a number of individuals involved in the defendants' decision whether to settle. There was Attorney Guerrini, the attorney of record who had been hired by the defendants' insurers; the insurance company's adjuster; the defendants themselves (residents of Pennsylvania); and Attorney Deanna Smith, a Pennsylvania attorney who represented the defendants personally. There were communication problems among them.

On or about January 7, 1999, Attorney Guerrini had a conversation with the defendants' insurance adjuster. During that conversation, the adjuster agreed that the plaintiff's proposed settlement was reasonable. The adjuster also told Attorney Guerrini that the defendants' personal attorney, Deanna Smith, had told the adjuster that the defendants agreed to the settlement proposal.[3] Attorney Guerrini did not confirm the agreement with either Attorney Smith or the defendants.

Attorney Guerrini called Attorney Faulkner and told her the case was settled. He said that the defendants had consented to pay the plaintiff the sum of $6000 and agreed to an injunction that the plaintiff had proposed. On the same day, Attorney Faulkner wrote to Attorney Guerrini to confirm the settlement. The letter said:

1. Neither counsel appended affidavits to their papers. The facts recited here were set forth by the lawyers at oral argument on August 25, 1999.

2. This action originally was brought against Capital Recovery Associates, Inc. ("CRA"), a collection agency. Also named as defendants were Hap and Denise Seiders—CRA's directors, employees and/or stockholders. The plaintiff filed a complaint against Chad Seiders on May 11, 1998 raising similar allegations (case no. 3:98cv877). On July 20, 1998, the two cases were consolidated under master docket no. 3:97cv2606. On or about December 12, 1997, CRA and Denise Seiders reached a settlement with the plaintiff. *See* doc. # 25. The pending motion is directed at the remaining individual defendants, Hap and Chad Seiders.

3. Under the terms of the policy, the defendants' consent was necessary before the case could be settled.

This is to confirm our agreement to settle the Musso cases as to the remaining defendants (Chad and Hap) for $6,000, payable to Joanne S. Faulkner Trust Account, and an injunction precluding direct or indirect reference as to any legal ramifications (civil or criminal), as per my letter of Nov. 29, 1998.

Enclosed is a draft judgment order. Please sign and return, or call to discuss.

With the letter, the plaintiff's counsel enclosed a draft of a stipulated judgment.[4]

Shortly after receiving the letter, Attorney Guerrini faxed to Attorney Smith a copy of the proposed stipulated judgment. Almost immediately, the defendants communicated their misgivings about the settlement to Attorney Guerrini. In particular, they were dissatisfied with the injunction because they believed it was far more restrictive than the law requires. Attorney Guerrini instructed Attorney Faulkner of his client's misgivings and of his doubts that the case would settle. On February 1, 1999, Attorney Guerrini told plaintiff's counsel that the case would not settle. That same day, the plaintiff filed the pending motion to enforce the terms of the settlement.

## II. *DISCUSSION*

■ There is a strong public policy favoring settlements. *See Anita Foundations, Inc. v. ILGWU National Retirement Fund*, 902 F.2d 185, 190 (2d Cir.1990). "Courts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence." *Id.*

"A settlement is a contract, and once entered into is binding and conclusive." *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir.1989), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). In this case, the defendants contend that such a contract does not exist because Attorney Guerrini lacked the authority, either actual or apparent, to enter into the settlement. The plaintiff does not dispute that Attorney Guerrini lacked the actual authority to enter into a binding settlement agreement, but rather argues that he had the apparent authority to do so.

■ Generally, the decision to settle a case is the client's, not his attorney's. *See Fennell v. TLB Kent Co., Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir.1989). However, "[i]f an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld." *Janneh v. GAF Corp.*, 887 F.2d at 436; *see also Hanover Insurance Co. v. Travelers Indemnity Co.*, 239 F.Supp. 37, 40 (D.Conn.1965).

■ At oral argument, the plaintiff made the argument that a lawyer's apparent authority to make decisions on behalf of his client can be presumed by the mere fact of his representation. In support of this proposition, the plaintiff cites *Edwards v. Born, Inc.*, 792 F.2d 387 (3rd Cir.1986). Contrary to the plaintiff's assertion, however, *Edwards* does not hold that a client creates apparent authority for his attorney merely by retaining the attorney. Rather, it holds that before a court can determine whether an attorney has the apparent authority to enter into a binding settlement agreement, it must inquire as

---

**4.** The stipulation for judgment, which was introduced as Defendant's Exhibit A, reads as follows:

The parties stipulate that judgment may enter in favor of plaintiff for damages, costs and attorney's fees in the sum of $6,000.00, and further stipulate that the judgment shall enjoin defendants from directly or indirectly using, permitting to be used, or benefiting from the use, by any debt collector or collection agency with which defendants are or become affiliated (including Capital Recovery Associates, Inc. or its trade name), of any letters or oral communications which directly or indirectly reference any legal ramifications (civil or criminal) of a dishonored check.

to whether the party took any positive action or made any manifestation to his adversary or his adversary's counsel that the party's attorney was cloaked with the authority to settle the case. *See id.* at 389–91 ("The crucial question in ascertaining whether apparent authority has been created is whether the principal has made representations concerning the agent's authority to the third party .... We agree with appellants that the record is devoid of communications directly from the plaintiffs to defense counsel, much less representations that might have led defense counsel to believe that [plaintiffs' counsel] had the [plaintiffs'] permission to settle.")

The holding of the *Edwards* case is in accord with the law of this circuit. *See Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir.1989) ("A client does not create apparent authority for his attorney to settle a case merely by retaining the attorney.") The Second Circuit, in discussing the doctrine of apparent authority, stated:

> Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons. Restatement (Second) of Agency § 8 (9158)... Further, in order to create apparent authority, the principal must manifest to the third party that he consents to have the act done on his behalf by the person purporting to act for him. *Id.* § 27. Second Circuit case law supports the view that apparent authority is created only by the representations of the principal to the third party, and explicitly rejects the notion that an agent can create apparent authority by his own actions or representations.

(Internal quotation marks omitted). *See id.*

▆ The record in this case simply shows that Attorney Guerrini has filed an appearance on behalf of the defendants. The record is entirely devoid of evidence to show that the defendants themselves took any positive action that would show that Attorney Guerrini had the apparent authority to settle the plaintiff's claims against them. *See id.* at 502; *see Edwards v. Born, Inc.*, 792 F.2d at 391. The court cannot enter judgment based upon the terms discussed between counsel. The plaintiff's motion must fail.

## III. CONCLUSION

The court recommends that the Motion for Judgment Upon Settlement (doc. # 65) be DENIED.

Any party may seek the district court's review of this recommendation. *See* 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).