LAND MINE ENTERPRISES and Land Mine Enterprises, on behalf of itself and all other persons entitled to share in funds received or to be received by Sylvester Builders, Inc., f/k/a John Mee, Inc. and Herbert Sylvester from Land Mine Enterprises, pursuant to agreement between them, Plaintiffs,

v.

SYLVESTER BUILDERS, INC., f/k/a John Mee, Inc., Herbert Sylvester and New Hampshire Insurance Company, Defendants.

New Hampshire Insurance Company, Defendant, Third–Party Plaintiff and Cross Claimant,

v.

United States of America, Third–Party Defendant.

No. 81Civ.931 (JES).

United States District Court, S.D. New York.

Nov. 17, 1999.

Witman, Stadtmauer & Michaels, P.A., Florham Park, NJ (Stephen M. Charme, of Counsel), for Plaintiff Land Mine Enterprises.

Goldman & Greenbaum, P.C., New York, NY (Sheldon M. Greenbaum, of Counsel), for Plaintiff Land Mine Enterprises.

Mary Jo White, United States Attorney for the Southern District of New York, New York, NY (Katherine A. Staton, Assistant United States Attorney, of counsel), for Defendant New Hampshire Insurance Company.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

The above-captioned action comes before the Court on the objections of plaintiff Land Mine Enterprises ("Land Mine") and defendant New Hampshire Insurance Company ("NHIC") to Magistrate Judge Leonard Bernikow's September 24, 1996, Report and Recommendation ("Report and Recommendation") on the parties' cross-motions for summary judgment, recommending that this Court deny Land Mine's motion for summary judgment and grant in part and deny in part NHIC's motion for summary judgment. For the reasons that follow, the Court adopts the Report and Recommendation except for that portion recommending denial in part of NHIC's motion for summary judgment, and the Court grants NHIC's motion for summary judgment as to all remaining claims asserted by plaintiff.

## BACKGROUND

As the facts relevant to the parties' motions are set forth in detail in the Report and Recommendation, only a brief summary of the facts giving rise to this action is set forth herein. This action arises from an undercover investigation conducted by the Federal Bureau of Investigation ("FBI") in cooperation with NHIC. In 1978, the FBI approached NHIC and requested that NHIC allow an FBI operative, Norman Reed ("Reed"), to pose as a representative of NHIC to assist the FBI in investigating fraud in the government-subsidized construction industry. NHIC furnished Reed with materials that would allow him to write bonds on construction projects, but the FBI assured NHIC that

Reed, whom the FBI described as a former police officer and licensed insurance agent, would not write any construction bonds without prior NHIC approval.

Reed apparently proved less trustworthy than the FBI and NHIC had hoped and wrote unauthorized bonds from which he retained the bond fees for personal profit. Before the FBI could stop the operation, Reed issued performance and payment bonds, each in the amount of $585,807 to a general contractor and partner of Land Mine, John Mee, Inc. ("Mee"), on a construction project known as Davidson I. When Mee appeared likely to default, Land Mine, the owner of Davidson I, notified NHIC that it might be called upon to perform under the bonds. NHIC immediately advised Land Mine that the bonds were not valid. When Mee defaulted, Land Mine completed Davidson I without the participation of NHIC and then commenced this action against NHIC for damages.

Land Mine commenced this action in February 1981, asserting claims against Mee and its successor company Sylvester Builders for damages incurred as a result of Mee's default under the Davidson I construction contract and against NHIC as surety under the payment and performance bonds issued by Reed to Mee. NHIC impleaded the United States as a third-party defendant to enforce an indemnification agreement between NHIC and the United States, and the United States Attorney for the Southern District of New York thereafter assumed responsibility for NHIC's defense.

In its complaint, Land Mine alleges contract and tort claims against NHIC. The contract claims allege that NHIC issued a 50% performance and a 50% payment bond in connection with the project, each in the amount of $585,807, and that NHIC was liable for the total amount of each bond because the general contractor had failed to perform the obligations bonded by Reed, purportedly as the agent of NHIC.

The complaint also pleads tort claims sounding in misrepresentation and negligence. Land Mine alleges that NHIC misrepresented Reed's authority to issue construction bonds on behalf of NHIC by providing him the indicia of authority as NHIC's agent. Land Mine further alleges that NHIC was negligent in its investigation of Reed's background and its supervision of Reed. Land Mine also seeks punitive damages. These tort claims, the only remaining claims in this action, are the subject of the instant cross-motions for summary judgment.

A brief outline of the procedural history of this case is necessary to understand the issues raised by the parties' objections to the Report and Recommendation. In March 1982 Land Mine moved for summary judgment, but the Court denied the motion by Memorandum Opinion, dated November 30, 1982, finding that material issues of fact remained as to Land Mine's reliance upon Reed's indicia of authority.[1] Land Mine renewed its motion for summary judgment in January 1983, and thereafter the parties entered into a stipulation pursuant to which NHIC conceded the validity of the bonds, Land Mine withdrew its motion for summary judgment, and the action was referred to Magistrate Judge Bernikow for a determination of damages. The Court entered this stipulation as an Order on April 1, 1983.

Further negotiations between the parties led to a settlement of the entire action, and the parties filed a Stipulation of Settlement on October 18, 1984. However, the Government subsequently moved to vacate this stipulation because it had not been authorized by the Deputy Attorney General as required by applicable federal regulations, and the Court granted the Government's motion.

1. This case was initially heard by Judge Charles E. Stewart of this Court and was reassigned to Judge John E. Sprizzo on January 10, 1994.

Further efforts to settle the case having failed, Magistrate Judge Bernikow conducted a four-day trial on damages in July 1987. In January 1989 Magistrate Judge Bernikow issued a Report and Recommendation to this Court, finding that Land Mine had incurred as a result of Mee's default on Davidson I out-of-pocket losses of $234,000 in payments to subcontractors recoverable under the payment bond and out-of-pocket losses of $252,635 for other construction costs recoverable under the performance bond. Magistrate Judge Bernikow also found additional damages under the performance bond of $360,445 in liquidated damages and $599,326 in lost profits on Land Mine's sale of a second project, Davidson II, which Land Mine argued it had been forced to sell at a loss to raise cash quickly when Mee defaulted on the Davidson I project and NHIC refused to honor the bonds written by Reed. Thus, the total damages awarded on the performance bond were $1,212,406, far in excess of the bond's face amount of $585,-807. Magistrate Judge Bernikow awarded $585,807 under the performance bond, plus $234,000 under the payment bond, for a total of $819,807, with prejudgment interest. He also rejected Land Mine's claim that NHIC had acted in bad faith.

In a Memorandum Opinion dated May 22, 1989, the Court adopted Magistrate Judge Bernikow's January 1989 Report and Recommendation. The parties thereafter submitted competing forms of judgment, which were referred to Magistrate Judge Bernikow. Land Mine objected to the use of the term "trial" rather than "hearing" to refer to the 1987 proceedings before Magistrate Judge Bernikow on the issue of damages and argued that Land Mine had other unspecified claims that were still unresolved. Magistrate Judge Bernikow recommended that this Court adopt the proposed judgment of NHIC using the term "trial." *See* Report and Recommendation, October 30, 1989. The Court adopted Magistrate Judge Bernikow's October 30, 1989, Report and Recommendation on this issue but expressly stated that the use of the term "trial" did not express any opinion as to the nature of the proceeding before Magistrate Judge Bernikow. The Court entered Judgment on December 14, 1989.

In March 1991 Land Mine wrote to this Court requesting that the case proceed to trial on its remaining claims. The Court referred the matter to Magistrate Judge Bernikow, who issued a March 31, 1992 Report and Recommendation recommending that Land Mine be permitted to proceed to trial on its tort claims against NHIC for negligence and misrepresentation. Over NHIC's objection, the Court adopted the March 31, 1992, Report and Recommendation in its entirety. On NHIC's motion, the Court certified the order for interlocutory appeal, but the Court of Appeals for the Second Circuit denied leave to appeal.

Thereafter, the parties proceeded with further discovery on Land Mine's tort claims. Land Mine sought recovery of the remaining $626,599 of the $1,212,406 that Magistrate Judge Bernikow found as damages under the performance bond but did not award to Land Mine because it exceeded the face amount of the bond. In addition, Land Mine sought its lost profits on future housing projects that Land Mine claims it would have been awarded but for NHIC's actions. In addition, Land Mine seeks punitive damages.

On May 19, 1995, NHIC moved for summary judgment dismissing Land Mine's remaining claims. NHIC argued before Magistrate Judge Bernikow that Land Mine had no standing to assert claims for lost profits on any project other than Davidson I because the additional projects were not owned by Land Mine and, in the alternative, that the claims for lost profits are speculative as a matter of law. NHIC further argued that Land Mine could not recover liquidated damages in tort, that Land Mine had waived its claim for punitive damages, and that Land Mine cannot recover punitive damages as a matter of

law. Land Mine cross-moved for partial summary judgment on NHIC's liability for negligence and misrepresentation, arguing that Magistrate Bernikow had already found that Land Mine had proved causation at the 1987 hearing on Land Mine's breach of contract claims.

In his Report and Recommendation to the Court, Magistrate Judge Bernikow recommends that NHIC's motion for summary judgment be granted in part and that Land Mine's motion for summary judgment be denied. Although he does not address at all Land Mine's claim for lost profits from the Davidson II construction project, he does recommend that the Court dismiss Land Mine's other claims for lost profits as speculative as a matter of law. The Report and Recommendation further recommends that the Court deny NHIC's motion with respect to Land Mine's claim for punitive damages. As for Land Mine's motion for summary judgment, Magistrate Judge Bernikow recommends that the Court deny the motion because there remain factual disputes as to reasonableness, causation, and reliance on the negligence and misrepresentation claims. Land Mine has not objected to Magistrate Judge Bernikow's recommendation that its motion for summary judgment be denied.[2] Both NHIC and Land Mine have, however, objected to Magistrate Judge Bernikow's recommendation with respect to NHIC's motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate where, as here, "there is no genuine issue as to any fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties seeking summary judgment carry the burden of demonstrating the absence of any genuine issue of material fact, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must enumerate "specific facts and circumstances supported by depositions, affidavits based on personal knowledge, and admissions" that create a rational inference in his favor and may not rely on conclusory allegations or denials. *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1452 (2d Cir.1991).

In considering NHIC's motion for summary judgment, the Court views all facts and construes all rational inferences derived therefrom in the light most favorable to Land Mine. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, absent a showing of a genuine issue of material fact by Land Mine, it is appropriate for the Court to grant summary judgment, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Land Mine's Claims for Lost Profits

■ NHIC's motion for summary judgment rests primarily upon its argument that Land Mine cannot assert any claim for lost profits on other construction projects. Land Mine claims that it would have received contracts for the construction of four more housing projects on which it allegedly would have made profits exceeding $5 million and that it is entitled to recover these lost profits from NHIC as damages in tort.

2. Land Mine's failure to raise any objection to that portion of the Report and Recommendation waives all such objections and precludes further review by this Court. *See Frank v.*

*Johnson*, 968 F.2d 298, 300 (2d Cir.1992); *Small v. Sec. of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989).

The obvious weakness in Land Mine's claims for lost profits, however, is that Land Mine admits that profits for the additional construction projects, including Davidson II, would have been received by Glen Harz ("Harz"), one of the principals of Land Mine, rather than by Land Mine itself, because Land Mine had no involvement in any of these additional construction projects. In fact, it is undisputed by the parties that Land Mine never applied for any other housing project after Davidson I, the project for which Reed wrote the bonds at issue. Thus, Land Mine clearly suffered no injury and does not have standing to assert any claim for lost profits.

Land Mine, however, argues that it should be permitted to substitute Harz as the real party in interest with respect to the claim for lost profits pursuant to Rule 17(a), Fed.R.Civ.P.[3] Rule 17(a) provides in relevant part that

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a). This provision applies not only to entire actions but also to separate claims within an action. *See Advanced Magnetics, Inc. v. Bayfront Partners Inc.*, 106 F.3d 11, 19–20 (2d Cir.1997). A Rule 17(a) substitution of plaintiffs should be liberally granted where "the change is merely formal and in no way alters the original complaint's factual alle-gations as to the events or the participants." *Id.* at 20.

In this case, however, Land Mine's reliance upon Rule 17(a) is misplaced, for Land Mine seeks not only to change the formal designation of the plaintiff in the complaint but also to amend the complaint to add new factual allegations about events and participants never mentioned in the complaint. Only a single paragraph in the complaint refers to Land Mine's claim for lost profits from other construction projects. This paragraph states in its entirety only that

Plaintiff's high reputation in the construction industry was severely and irreparably adversely affected and damaged, causing plaintiff, among other things, to fail to obtain commitments from the U.S. Department of Housing and Urban Development in connection with other non-related construction projects.

Complaint, January 23, 1981, ¶ 53(e). Neither this paragraph nor any other paragraph ever refers to Harz or to the construction projects that form the basis for Harz's claim for lost profits. Thus, the present complaint clearly limits plaintiff's claim to lost profits only from those construction projects that Land Mine itself sought but was not awarded and affords NHIC no notice that the damages alleged in paragraph 53(e) of the complaint in fact arise from construction projects for which Land Mine never even applied. Harz's claim for lost profits would thus substantially expand the relevant events and participants beyond the scope of the complaint. Rule 17 affords this Court no basis for permitting Land Mine to assert new claims never pleaded before this Court.[4]

---

**3.** Land Mine also argues that the caption of its original complaint already includes Harz as a party plaintiff by the caption's reference to "all other persons entitled to share in funds received or to be received by" the general contractor Mee from Land Mine "pursuant to agreement between them." Land Mine's argument is unpersuasive. The quoted language in the caption obviously refers only to the claims of subcontractors, laborers, and materialmen against the general contractor pleaded in paragraphs 26 and 32 of the complaint and cannot reasonably be construed to include Harz as a principal of Land Mine.

**4.** Even if this Court permitted Harz's substitution as the real party in interest, Harz would

Although Land Mine relies upon Rule 17(a), what Land Mine in effect seeks is not the substitution of Harz as the real party in interest but the amendment of its complaint pursuant to Rule 15 to add Harz as a plaintiff to assert his own tort claims against NHIC. Such an amendment, however, would be both futile and untimely. Land Mine's proposed amendment would be futile because it is well-established under New York law that, where a plaintiff alleges only economic damages resulting from defendant's alleged negligence, defendants owe no duty to plaintiffs with whom they are not in contractual privity. *See Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 557 N.Y.S.2d 286, 556 N.E.2d 1093 (1990); *Ossining Union Free School Dist. v. Anderson La-Rocca Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989). Since NHIC never had any contractual relationship directly with Harz, or his corporation Zibeq Enterprises, any damages allegedly sustained by them are not recoverable from NHIC. Furthermore, Land Mine's fourteen-year delay in asserting these claims after filing its complaint in 1981 clearly has unduly prejudiced NHIC. Not only must NHIC rely upon the stale memories of witnesses regarding distant events, but relevant documents regarding the additional construction projects have been lost or destroyed. *See* Declaration of Katherine A. Staton, dated September 1, 1995, ¶¶ 3–7, Exh. 10. Therefore, even if Land Mine were to bring a motion to amend the complaint pursuant to Rule 15, any such motion by Land Mine would have to be denied. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In short, Harz's claims for lost profits are not properly before the Court in this action, and Land Mine has no standing to assert any such claim on behalf of Harz.

*Land Mine's Claim for Punitive Damages*

Land Mine cannot assert any claim for punitive damages, having expressly declared to this Court its intent to abandon these claims. In response to NHIC's objections to Magistrate Judge Bernikow's March 31, 1992, Report and Recommendation recommending that Land Mine be permitted to proceed to trial on its tort claims for negligence and misrepresentation, Land Mine attempted to minimize the extent of its tort claims in a successful effort to persuade this Court to allow Land Mine to proceed with its tort claims. In its response to NHIC's objections to the Report and Recommendation, Land Mine made the following representation to the Court:

> Land Mine does not seek to recover punitive damages. Land Mine seeks only compensatory damages for the injuries caused by the misrepresentation and negligence alleged in the eighth and tenth counts of the complaint.... Further, Land Mine does not seek a double recovery but only the actual damages that it has suffered beyond the face amount of the bonds.

Memorandum of Law in Response to Defendant NHIC's Objections to Magistrate Judge Bernikow's March 31, 1992 Report and Recommendation, dated May 11, 1992, at 2. Land Mine now flatly repudiates this representation to the Court and renews its claims for punitive damages. Land Mine argues that, properly understood in context, the above-quoted statement does not constitute a waiver of its claims for punitive damages and addressed only the question of what evidence Land Mine would adduce at trial. Land Mine's argument is disingenuous, however, and is contradicted by the clear and unqualified language of its prior submission to the Court. This Court and NHIC were entitled to rely upon Land

---

not be the real party in interest with respect to any of the projects upon which Land Mine bases its claim for lost profits. In fact, the entity that applied for these projects was Zi-

beq Enterprises, a corporation in which Harz was a shareholder. *See* Declaration of Katherine A. Staton, dated September 1, 1995, Exh. 5 at 665–66, Exh. 6 at 1021.

Mine's representation that it would not assert any claim for punitive damages, and Land Mine cannot now avoid the consequences of its express waiver of these claims by attempting to manufacture ambiguity in what the Court must find was an unequivocal waiver. Thus, the Court dismisses Land Mine's claims for punitive damages.

### Land Mine's Remaining Tort Claims

■ Land Mine's remaining claims for tort damages must be dismissed because Land Mine has already recovered by its contract claims on the bonds damages in excess of the tort damages it may recover. Apart from its claims for lost profits and for punitive damages, Land Mine seeks only $626,599, the difference between the $1,212,406 that the Court found in contract damages and the $585,807 face amount of the bonds to which Land Mine's contract damages were limited. The $1,212,406 in damages previously found by the Court consist of $599,326 in lost profits on the Davidson II construction project, $360,445 in liquidated damages, and $252,635 in cost overruns.

■ Neither the lost profits nor the liquidated damages are recoverable in tort by Land Mine. As discussed above, the lost profits on the Davidson II project cannot be recovered by Land Mine because Land Mine suffered no damages with respect to Davidson II, and Land Mine cannot now amend its complaint to assert new claims by Harz. Thus, the $599,326 in lost profits awarded on the Davidson II project must be subtracted from the total of $1,212,406, reducing the total amount that Land Mine could recover to $613,080. Since Land Mine has already recovered $585,807 (the face amount of the bonds), the total amount left unrecovered is $27,275. However, Land Mine cannot recover liquidated damages on its tort claims, for liquidated damages "must be the result of an express agreement between the parties." *Ohanian v. Avis Rent A Car System, Inc.,* 779 F.2d 101, 109–10 (2d Cir.1985). Since the liquidated damages that Land Mine has already recovered were based on the contractual agreement between it and NHIC, and since that agreement limited recovery to the face amount of the bonds, they cannot recover liquidated damages to the extent they exceed the amount of the bonds. It follows, therefore, that Land Mine's remaining claims for liquidated damages cannot be recovered in tort. Thus, the $252,635 in cost overruns is the only damages that Land Mine could recover in tort. However, because Land Mine has already recovered its cost overruns as part of the damages award for its contract claim on the performance bond, Land Mine has already been fully compensated for this loss. Accordingly, Land Mine has no recoverable damages in tort for which it has not already been fully compensated.

## CONCLUSION

For the foregoing reasons, the Court adopts that portion of Magistrate Judge Bernikow's Report and Recommendation recommending denial of Land Mine's motion for summary judgment but declines to adopt that portion of the Report and Recommendation recommending that the Court grant in part and deny in part NHIC's motion for summary judgment. The Court grants NHIC summary judgment on all remaining claims asserted by Land Mine. The Clerk of Court is directed to enter Judgment accordingly and to close the above-captioned action.

It is **SO ORDERED.**